J-A17041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: A.D.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: P.C.J. A.K.A P.J. A.K.A | : | |
| P.K. A.K.A P.C. A.K.A P.S.C.J., | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | No. 687 EDA 2021 |

Appeal from the Order Decree Entered March 11, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-000006-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: P.C.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 689 EDA 2021 |

Appeal from the Order Entered March 11, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002785-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: A.N.J., A | : | IN THE SUPERIOR COURT OF |
| MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: P.C.J. A.K.A P.J. A.K.A | : | |
| P.K. A.K.A P.C. A.K.A P.S.C.J., | : | |
| MOTHER | : | |
| | : | |
| | : | No. 690 EDA 2021 |

Appeal from the Order Decree Entered March 11, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000007-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

APPEAL OF: P.C.J., MOTHER

No. 691 EDA 2021

Appeal from the Order Entered March 11, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002784-2015

BEFORE: McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED AUGUST 16, 2021**

In these consolidated appeals, P.C.J. (Mother) challenges the decrees entered by the Philadelphia County Court of Common Pleas (trial court) terminating her parental rights over the two minor children, A.N.J. (age 8) and A.D.J. (age 7). Mother also appeals the orders changing the permanent placement goals from reunification to adoption. We affirm.

**I.**

On September 30, 2015, the Department of Human Services (DHS) received a general protective services report alleging that Mother was unable to provide stable housing for the children and that Mother had substance use and mental health issues. DHS then filed dependency petitions as to both children on October 22, 2015. Soon thereafter, on October 30, 2015, the trial

---

[*] Retired Senior Judge assigned to the Superior Court.

court adjudicated the children dependent and committed them to the custody of DHS.

Mother was referred to the Clinical Evaluation Unit (CEU) for substance use and mental health assessments, random drug screens, and to the Achieving Reunification Center. Mother was granted supervised contact with the children.

Over the next few years, the trial court held regular permanency hearings for the children, and each time the trial court found that DHS made reasonable efforts to finalize children's permanency plan and that the children's placement was still necessary and appropriate. Mother was continually referred to CEU for assessments, monitoring and drug tests.

On January 11, 2021, DHS filed petitions to involuntarily terminate Mother's parental rights and to change the permanency goals from reunification to adoption. The trial court held an evidentiary hearing on March 11, 2021. DHS presented the testimony of the assigned case manager, Christina Cross, who worked with the Community Umbrella Agency (CUA). The Child Advocate presented the testimony of an assigned social worker, Roya Paller. Mother was present and represented by counsel and she testified on her own behalf.

At the time of the hearing, the children had been in the custody of DHS for over five years and in the care of a foster parent for approximately 18 months. Cross testified that throughout that time, Mother had received

assistance in obtaining housing, employment and treatment for drug addiction. Mother understood that in order to be reunified with her children, she had to make progress in all of these areas; otherwise, her parental rights could be terminated.

However, Cross testified that Mother had failed to keep in contact with CUA, had not consistently visited her children, and had not made sufficient progress with her substance use and mental health issues. Mother had most recently reported that she was residing with her grandmother, but Cross had documented a fraught history of past incidents in which Mother had been evicted from her grandmother's residence.

Furthermore, Mother had not complied with CEU assessments and random drug tests. In a recent telephonic assessment, she hung up on the CEU. Significantly, Mother only submitted to five random drug tests in the past five years, and in all five drug tests, she tested positive for a controlled substance, including marijuana, cocaine, PCP and benzodiazepines. At the rehabilitation center Mother was assigned to (Interim House), she twice left the facility without completing the program.

More recently, from October 27, 2020, to January 7, 2021, Mother was admitted into the Pathways to Recovery (Pathways) partial hospitalization program. While there, Mother tested positive for marijuana and benzodiazepines on October 30, 2020; marijuana on November 5, 2020,

November 11, 2020, and November 20, 2020; and marijuana and cocaine on December 18, 2020.

Pathways then referred Mother to an intensive outpatient treatment program (Wedge) to address her post-traumatic stress disorder, which had been slowing down her progress at Pathways. She was enrolled with Wedge at the time of the hearing, and it was reported that during her enrollment there, Mother had tested positive for a controlled substance.

Although Mother was always observed to be acting appropriately with the Children during visits, Cross believed that the children did not share parent-child bonds with her. Accordingly, Cross concluded that the children would not suffer irreparable harm due to the termination of Mother's parental rights.

Cross explained that both children are in the care of the same foster parent, who offers them a safe and stable home environment suitable to meet all of their needs. Cross stated her view that terminating Mother's parental rights would be in the children's best interests. In support of that opinion, Cross emphasized that Mother had not been successful in addressing her substance use and mental health issues; in fact, Mother repeatedly tested positive for controlled substances and she had not met any of the children's needs in the last five years. Between January 2020 and June 2020, Mother's whereabouts had been unknown, despite the requirement that she remain in contact with CUA.

Paller testified at the hearing that she met with both children on behalf of the Child Advocate to discuss their understanding of adoption. According to Paller, both children expressed a desire to be adopted by their current foster parent.

Mother testified at the hearing on her own behalf. She described her efforts to comply with the conditions of reunification with her children in the past five years. According to Mother, her setbacks occurred in large part due to inconsistent information on when her children would be returned to her, as well as repeated substitutions of the case worker assigned to this matter. Mother stated that she wants what is best for her children.

At the conclusion of the hearing, the trial judge summarized all of the above facts. The trial judge then stated the reasons for its adjudication:

> [T]he testimony is clear that the parent bond is with [their foster parent]. Again, they don't know their father, and mother has been a visitation resource. However, nothing more. They love their foster mother who provides their daily needs. This Court finds that the children would not suffer irreparable harm if the parental rights are terminated. The Court finds that the developmental, physical, emotional needs and welfare of the children are being met by their foster parent. Mother has indicated that she wants her children to be happy, and it appears that they are happy in their current placement, which is a preadoptive home. Thus this Court finds that it is in the children's best interests for the parental rights of both [M]other and [F]ather, . . . to be terminated under Sections 2511(a)(1),(2),(5), and (8) as well as Section 2511(b) of the Adoption Act.

Evidentiary Hearing Transcript, 3/11/2021, at pp. 53-54.

The trial judge then entered decrees as to both children involuntarily terminating the parental rights of Mother. The trial judge also ordered the

permanency goals to be changed to adoption. Mother timely appealed and in her appellate brief, she raises two issues:

> A. Whether [DHS] failed to prove by clear and convincing evidence that Mother's parental rights should have been terminated pursuant to the Adoption Act, 23 Pa.C.S. §§ 2511(a) (1), (2), (5) and (8)?

> B. Whether [DHS] failed to prove by clear and convincing evidence that the permanency goal should be changed to adoption where Mother had substantially completed her single case plan objectives?

Appellant's Brief, at 4 (suggested answers omitted).[1]

## II.

## A.

We first consider Mother's appellate claim that the trial court abused its discretion in terminating her parental rights over her children, A.N.J. and A.D.J.[2]

The termination of parental rights involves a two-step analysis. First, "[t]he party seeking termination must prove by clear and convincing evidence

---

[1] Mother's appellate briefs are identical in both of the consolidated appeals.

[2] The trial court's decrees and orders are reviewed under an abuse of discretion standard. *See In re G.M.S.*, 193 A.3d 395, 399 (Pa. Super. 2018) (citation omitted). "We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings." *In re Interest of D.F.,* 165 A.3d 960, 966 (Pa. Super. 2017). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re A.S.*, 11 A.3d 473, 477 (Pa. Super. 2010). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *Id.*

that the parent's conduct satisfies the statutory grounds for termination delineated in [the subsections of 23 Pa.C.S. § 2511(a)]." *In re Adoption of J.N.M.,* 177 A.3d 937, 942 (Pa. Super. 2018) (quoting *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007)). Clear and convincing evidence is that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re D.L.B.*, 166 A.3d 322, 326 (Pa. Super. 2017) (quoting *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000)).

Second, once a trial court establishes that clear and convincing evidence satisfies at least one of the subsections of 23 Pa.C.S. § 2511(a), the trial court must then determine if involuntary termination is in the child's best interest, as outlined in Section 2511(b). *Id.* This requires the trial court to consider "the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). Moreover, "[t]he rights of the parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent." *Id*.

Here, following an evidentiary hearing on DHS's petitions, the trial court ruled that termination was proper under subsections 2511(a)(1), (2), (5) and (8) of the Adoption Act, which provide as follows:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a).

The trial court then found that termination was in the children's best interests pursuant to Section 2511(b) of the Adoption Act.

The record in this case supports the trial court's rulings in their entirety. As to subsection 2511(a)(1), the record shows that Mother neglected her parental duties to the children over the previous five years. During the time that the children were in the custody of DHS, Mother was unable to make

significant progress towards reunification. She did not obtain stable housing or complete her treatment programs for her substance use and mental health issues. In fact, she repeatedly tested positive for controlled substances throughout the five-year period.

In the six months preceding the filing of the petitions for termination, Mother had not seen the children and her whereabouts were unknown. This demonstrated a relinquishment of Mother's parental claims and her failure to perform parental duties. Thus, the evidence was sufficient to support the trial court's findings as to subsection 2511(a)(1). *See In re: Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010); *In re: Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008).

As to subsection 2511(a)(2), clear and convincing evidence supports the trial court's determinations. This provision concerns the present and future needs of the child. *See In re S.C.*, 247 A.3d 1097, 1104-05 (Pa. Super. 2021). Termination may be warranted if three elements are met:

> (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his [or her] physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re: Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2000).

"[W]hen a parent has demonstrated a continued inability to conduct his [or her] life in a fashion that would provide a safe environment for a child, whether that child is living with the parent or not, and the behavior of the

parent is irremediable as supported by clear and competent evidence, the termination of parental rights is justified." ***In re Z.P.***, 994 A.2d at 1116.

Here, the record demonstrates Mother's inability to care for the children on a full-time and permanent basis. As discussed above, Mother never fully completed the objectives for reunification, which left the children without parental care for over five years. Mother has attempted to address her substance use and mental health issues, but she has not been able make steady progress as shown by her repeated drug use, inability to provide a stable environment for the children, and failure to complete the treatment programs she had entered. Thus, as the trial court found, all three factors of subsection 2511(a)(2) have been met.

Finally, as to subsections 2511(a)(5) and 2511(a)(8), again, clear and convincing evidence supports the trial court's determination. "Termination of parental rights under [subsection] 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***Z.P.***, 994 A.2d at 1118. Similarly, termination is warranted under subsection 2511(a)(8) if "(1) the child has been removed from parental care for at least 12 months; (2) the conditions which led to removal continue to exist; and (3) termination would best serve the welfare of the child." ***Id.*** (quoting ***M.E.P.***, 825 A.2d at 1275-76).

In this case, the children have both been removed from Mother's care for several years. The conditions which led to the removal and placement of the children – Mother's substance use and mental health issues and unstable housing – continue to exist. Multiple witnesses at the evidentiary hearing testified that termination would be in the children's best interests. The children also indicated that they wished to remain permanently in the care of their foster parent, who they consider to be their mother and who has seen to all the children's needs since 2019. Thus, the record supports the trial court's conclusion that termination is warranted as to both children.

Although Mother does not now dispute the trial court's findings as to subsection 2511(b), and issues omitted from briefing are considered waived, *see In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017), we note that we would find the issue to have no merit had it been raised. For subsection 2511(b) to be satisfied, the trial court must first find that at least one of the grounds for termination enumerated in subsection 2511(a) have been met. Then, the trial court must evaluate whether termination would destroy a parental bond between Mother and the children. *See* 23 Pa.C.S. § 2511(b).

"The extent of any bond analysis . . . necessarily depends on the circumstance of the particular case." *In the Interest of K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). "In cases where there is no evidence of any bond between the parent and the child, it is reasonable to infer that no bond exists." *Id.* at 762-63. "Common sense dictates that courts considering termination

must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, there was ample evidence that Mother had minimal contact with the children for over five years. There were long periods of time during that span in which Mother never saw the children at all, and when visits did occur, they were supervised. Importantly, the evidence showed that the children have formed a strong bond with their foster parent. There was unrebutted testimony by the case manager that the children would prefer to remain permanently in their foster parent's care. It appears that the foster parent is able to meet all of the children's needs.

The record, therefore, supports the trial court's finding that termination of Mother's parental rights would not destroy a bond between she and the children because no such bond presently exists. Thus, we affirm the decrees of termination.

**B.**

Mother next argues that the trial court abused its discretion in changing the goal of the dependency proceedings from reunification to adoption. Because we have concluded that the trial court did not abuse its discretion in terminating Mother's parental rights over the children, this issue is moot. *See In re Adoption of A.H.*, 247 A.3d 439, 446 (Pa. Super. 2021) ("[T]he effect of our decision to affirm the orphans' court's termination decree necessarily

renders moot the dependency court's decision to change Child's goal to adoption.").

Even if we were to reach the merits of this issue, we would conclude that no relief is due. The purpose of the Juvenile Act is to "preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained." 42 Pa.C.S. § 6301(b)(1). The Act is additionally intended to "prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment." *In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006).

"An agency is also not required to offer services indefinitely, where a parent is unable to properly apply the instruction provided. However, an agency must redirect its efforts towards placing the child in an adoptive home only after the child welfare agency has made reasonable efforts to return a foster child to his or her biological parent, but those efforts have failed[.]" *In the Interest of T.M.W.*, 232 A.3d 937, 947 (Pa. Super. 2020).

When deciding whether to change the permanency goal in a dependency action, subsection 6351(f) of the Juvenile Act requires the trial court to consider:

> (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might

- 14 -

be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months.

*In Interest of L.T.*, 158 A.3d 1266, 1277 (Pa. Super. 2017) (quoting *In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011)).

Additionally, a court is required to provide compelling reasons why it is not in the best interest of the child to return to his or her parents and to instead be placed for adoption. *See* 42 Pa.C.S. § 6351(f.1)(5)(iv)(C). The child's best interest, safety, permanency and well-being must take precedence over all other considerations in a goal change proceeding. *In re R.M.G.*, 997 A.2d 339, 347 (Pa. Super. 2010). The parent's rights are secondary and a goal change to adoption may be appropriate, even under circumstances where a parent substantially complies with a reunification plan. *Id.* A court cannot "subordinate indefinitely a child's need for permanence and stability to a parent's claim of progress and hope for the future." *Id.* (quoting *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006)).

In this case, there is clear and convincing evidence in the record to support the trial court's conclusion that a change in permanency was in the best interests of the children. The trial judge recounted on the record that for five years, Mother has demonstrated an inability to provide a safe environment for the children, and she has not sufficiently progressed in treating her substance use and mental health issues. *See* Evidentiary Hearing Transcript, 3/11/2021, at pp. 53-54. The case worker testified that it was not viable for

- 15 -

children to be reunified with Mother, and that a permanent placement with their current foster parent would be the best course. Accordingly, the trial court committed no abuse of discretion in ordering the goal of the dependency proceedings to change from reunification to adoption.

Decrees and orders affirmed.

Judge King joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2021